Thank you, Your Honor. May it please the Court. The District Court committed legal error in barring restitution of excessive and unjustified payments made over BP's objections pursuant to a District Court ruling that was later reversed on appeal. Centuries of case law confirm that restitution is appropriate in these circumstances. As this Court held in the Inland Credit case, it is the power and duty of the Court to restore to a litigant what he has lost by an erroneous judgment. Restitution is appropriate here on two independent grounds. First, because the windfall payments were compelled by a Court order that was reversed on appeal. And second, because the payments were made over BP's objections pursuant to a disputed contract interpretation and BP's position was The brief says that BP began appealing some of these awards in November of 2012. What happened to those appeals? Those were appeals within the settlement program internal appeals process, which is established under Section 6 of the settlement agreement. Those appeals were denied, some of them prior to the District Court's ruling in April that essentially mandated that all such appeals would be summarily denied and the rest of them afterwards. But they were all denied. And then the settlement agreement provides in Section 6.6 for an opportunity for parties to seek discretionary judicial review of individual awards, which is one of the two mechanisms by which the parties are supposed to be challenged and raise interpretive disputes. But the District Court in its May 20, 2013 final rules governing judicial review included a provision. Are you saying that every appeal, did every appeal go to the District Court and they were all denied by the District Court? No, Your Honor. So the appeal process in Section 6, there are two steps. First I just want to know, you said that you began appealing in November of 2012. Did any of those appeals end without BP taking further action? Did some of them go one way, some of them went another? The same thing happened to all of them. And if I may explain, there are two steps to the process in Section 6. First, a party can raise an appeal within the settlement program. There's an appeal panel that adjudicates with that outcome. Section 6.6 allows a party to seek judicial review of that appeal panel determination. That's a determination by judges under the settlement agreement, appeal panel judges, not by the District Court. But they can then seek judicial review in the District Court under Section 6.6. However, the District Court in issuing its rules to govern that process of judicial review included rules that precluded, expressly That's my question. Every single one of those appeals got caught up in the District Court's global order saying no more appeals. They're globally denied. All of the awards that we're talking about here were appealed through the first step, and the District Court refused to rule on any of them and barred BP from filing requests for discretionary judicial review at the second step. So we didn't get any orders from the District Court on any of these awards. You reversed, last month you got that reversed. Yes, Your Honor. So in fact, this is a particularly strong case for restitution because here we're talking not about one judicial order that was erroneous and later reversed, but in the meantime money was wrongfully paid out, but two orders. Because BP should not have been required to pay these funds in the first place. That was the first order on the matching issue that this court later overturned. But even beyond that, BP should have been permitted to raise these individual awards in the District Court and then ultimately in this court by means of Section 6.6, but the District Court You can't have that global bar once our panel didn't affirm you're seeking an emergency injunction, right? That's correct. So there are two little procedural wrinkles off your merits argument, which would be with their Rule 59 motion or with our court's remand, why not let this current problem sort of surface there? Are those individual appeals going to revive? I don't know, Your Honor, because the District Court, the mandate just issued on Monday in that appeal reversing the second order, and it's not clear what the District Court is going to do. Clearly the mandate of this court requires the District Court to allow BP going forward to file appeals, but the District Court hasn't indicated anything about what, if anything, it will do about letting BP go back and retroactively try to file appeals. And I would submit that it makes no sense and would be unjust to require BP to wait still longer while further dissipation of the proceeds is occurring based on an error that was not BP's fault and that BP is wrongly suffering the consequences of now for two years. And to make BP start over again would make no sense. And also I submit it would not be in the interest of judicial economy to force BP to file hundreds of requests for judicial review in the District Court, and then, depending on what the District Court does, come up to this court, when this court can simply short-circuit the problem, reverse it. The only advantage I can see about that approach, although I understand that you've been protesting, protesting, and even our court hasn't really responded until now. The advantage to that is if you look at the Gaspardo – is that how you pronounce it? Yes, Your Honor. A lot of his identified problems include the non-matching but then other deficiencies as well, so they can get very sort of tangled. Let me phrase that as a question to you. Of the four examples he lists of sort of dire non-matching, undeserved, unjust enrichment, how many of those four included other deficiencies besides the non-matching? Do you know that off the top of your head? I don't, Your Honor, but the matching is the key issue. And I submit, I mean, as a practical matter, what the District Court did with respect to the awards that had not yet been paid but had been erroneously calculated under matching and under the non-matching order, if you will, and the District Court, with respect to those about 1,400 awards that were in various stages of the process, some of them had gone all the way through the settlement program appeal process, but they just hadn't been paid. Many of them, probably the vast majority of them, their claimants had signed releases. And yet, because they hadn't been paid, the District Court said, well, those ones, of course, need to be recalculated. But he didn't do it himself. He sent it back to the settlement program, which has the accountants that are trained to do this very process, and those are now being recalculated under Policy 495, the corrected policy that the District Court approved. That's a good point. So the release, those had releases? Yes, Your Honor. So the way it works is the claims administrator sends out the release once the settlement program has determined the award, but BP has the right to appeal. Am I oversimplifying if I say this dispute comes down to the restatement, Section 35? In other words, if you had compromise, if the non-matching issue had been identified before the settlement agreement and you decided, you know, we just want finality, we understand that's there, but we're going to buy a piece. We're going to give you an irrevocable payment. You wouldn't be able to seek restitution, whereas the opposite viewpoint is you didn't anticipate that. The second it popped up, you protested it endlessly, and therefore it's a Harrington or it's a Rule Section 35 issue. Is that the dilemma here? I think that that's largely correct. I would quibble in a couple of respects. Number one, it's also Restatement Section 18 because of the reversal. But 18 is the judicial order. Yes. This looks more, you know, solidly contractual. We go back to the recital H, and they say irrevocable, however you pronounce that, and therefore that means unalterable, cannot get back, and BP made that choice. Well, but again, I mean, I think it's both Section 18 and Section 35. And I would also quibble a little bit. I guess what's the difference? I don't think it matters. I'm just both of them apply here. I'm just trying to work through the timing of all this. You're telling us that every award that you're contesting now was subject to an appeal. Within the settlement program, not to the district court. Well, because the district court said, I'm not going to hear these appeals. Exactly. And the releases weren't signed. The releases were signed while this appeal was pending. In other words, you didn't give them the release. The claims administrator sent the releases to the parties while you had an appeal pending. Is that correct? More precisely, the settlement program issues an award. It says, we think you're entitled to X dollars, and here's the release. And then the claimant can sign the release and often does immediately. So you've got 14 days? You've got 10 or 15 or 20 to go to the appeals process. And if you do appeal, you don't have any control over whether that release gets signed or not. Correct. That's correct. So if you were to win the appeal in the interim, it wouldn't matter whether the release were signed or not. Is that right? Well, the release is a release of the claimant's claims in exchange for whatever they're ultimately determined to be entitled to under the agreement. You have to say the release is in the plaintiff's hand while your appeal is pending? Well, or they've signed it and returned it to the settlement program. But you still have the right to appeal. Exactly. And that's undisputed. The money doesn't go out until the appeal is resolved. The money doesn't go out until the appeal is resolved. And actually, under the court's rules for discretionary review, the money doesn't go out until discretionary. Except he didn't let us do that. Right. So here you had appeals as the releases were being signed. You had appeals to the district court. Correct. Not to the district court, Your Honor. To the settlement program, the appeals panel. But then the district court said, I'm not going to hear any appeals. Did you try to appeal to the district court and he said no? I think there may have been a handful that were filed, but the vast majority of these wouldn't. May 20, 2013 is fairly early, and most of these awards were after that. And so we couldn't even file them. And he didn't rule on any of them. He just issued his order saying, you can't bring these to me. So therefore, we had no ability to get a ruling from the district court. The Bell panel divided. It's dealing with a lot of this because that's the first time you finally get to the court of appeals and say we've got a problem. Did anybody in any of the argument or briefings say to them, plus there are past payments that we need to grab back? I mean, that was not – the issue was about the merits. But certainly in terms of asking for an injunctive relief, our whole point was this money is going out the door. We're being injured. It's going to be hard for us to get it all back, and so we need relief. But I guess specifically no one seems to have focused on the payments that had already gone out, at least to that court. So then the court remands back, and Judge Barbier the very next day freezes things. Correct me if I'm wrong. But the crucial thing I'm driving to is Denny said parties, please tell me what to do for a permanent injunction. Remember in November 2011? So then each side submits. When I looked at the submission from your client, it was forward-looking only. Do you remember that? The proposed permanent injunction related to bail claims. The claims administrator shall process and pay whether new claims, claims from final ones that were suspended or claims in the appeal process. So I guess the question – the oddity for me that in this very merits issue wasn't no one said to the Fifth Circuit, to our court, what about all the past monies? Then it goes back down to Barbier, and he asks, what's the relief I should enter? And at that point, both sides seem still to be saying only prospective. Am I wrong? Well, I think – perhaps I'm not sure exactly which filing Your Honor is referring to. I'm referring to right after the bail panel remands, and he says – okay, he immediately freezes any future payments so we can resolve and eventually get to $495,000. Yes, Your Honor. But he says to both parties, tell me basically what I should tell the claims administrator. And it seems to me that both parties anticipated only future payments would be affected. Well, I think – again, I haven't gone back and looked at that document. But my recollection of what we were fighting about was the terms of the preliminary injunction that the court – this court had ordered the district court to enter, which ultimately went back and forth, and the district court amended it in December of 2013, which was going to govern while the court was deciding what to do about the remand on the matching issue. At the time Your Honor is referring to, the district court had not even decided whether matching was going to be required or not. It didn't decide that until December 24th. So we were fighting about the interim steps to be taken in that interim period. When is the first time that you know in the record the argument is brought up that we need disgorgement under a restitution period? Well, again, two points. In terms of the specific request for restitution, that was in June of 2013. But again, all the way along BP had been saying, look, this money is wrongfully going out the door. You need to stop it because it's going to be hard for us to get it back. We're suffering irreparable injury because we're not going to be able to get it all back. We said that to the district court in April of 2013. We said it to this court in April of 2013. We said it to this court in our merits briefing thereafter. And this court ultimately agreed with us. So it wasn't an issue, it wasn't a surprise that BP was concerned about the fact that it was going to be hard for it to get all of this money back. And indeed, that's still the case today since 10,000 business economic loss awards had been paid by October of 2013 when this court reversed. And of those, we're only fighting here about about 800 because it's just impracticable to go after all of them. What's your quick thought? You don't have much time, maybe a little more time could be given if this question is hard to answer quickly. What's your thought about the word irrevocable in recidivism? Well, what that's referring to, Your Honor, is the settlement payments. And settlement payments are defined in the agreement as what's due under the agreement. And what's due under the agreement is not whatever amount is calculated by the settlement program but whatever amount is ultimately determined to be correct through the appeals process and the discretionary review. But very exactly, though, that language in the settlement payment says what's due pursuant to a claim pursuant to settlement agreement. And no one's denying these were claims pursuant to settlement agreement. But, Your Honor, what it says is obligation to make settlement payments. And settlement payments is defined as what's due as the compensation that's due under the agreement. And the compensation that's... I'm sorry, is that all right if he has a moment? Yes, it says to any qualifying economic class member who signs an individual release prior to the effective date and the terms of every such individual release shall be fully enforceable, binding, and irrevocable. So the terms of the release are irrevocable, but that which is... Well, read the definition you're relying on. Settlement payment shall mean the total compensation amount to be paid to a claimant for any claim made pursuant to the terms of the agreement. So the way it's structured, it could be any payment made... Pursuant to the... ...claim subject to the agreement. And no one's denying the claims are subject to the agreement. Well, Your Honor, so if I understand the point you're making, the logical consequence would be that once the release goes out the door, the number cannot be changed. But that's simply not the way the program works, and not even what class counsel says the program means. Does that encompass even vast overpayments or fraud? And it would eliminate the appeal process because the release goes out the door before the appeal has even been brought. But the money doesn't. No, but if the release, if the signing of the release, which is what this is talking about, right, if the signing of the release precludes any change to the amount determined by the claims administrator, then you've just thrown out the window the appeals process. And, moreover, that result would be inconsistent with what this court held in the nonprofit appeals, where class counsel made exactly the same argument and the individual claimants made exactly the same argument about the release makes everything final. Once the release is signed and the money goes out the door, BP can't come back. And this court, in footnote 4, rejected that. So that's wrong. We can get to the merits. So it's not only wrong as a matter of the interpretation of the agreement and the obvious import of the appeals process and the discretionary review process. It's also wrong as a matter of binding circuit precedent. I see my time has expired. Thank you. Would you please add three minutes to the evidence? Thank you, Your Honor. Samuel Zakharoff for the class. May it please the Court. In answer to the question posed by Judge Higginson, the first request for any sort of restitution was a motion filed on June 27, 2014. Before that, there had been no claim for any kind of clawback or payments back, not before the Bell panel, not before any proceeding in the district court or anywhere else. And so until 2014, this issue was not presented, was not preserved, was not alive. Although indirectly, they did repeatedly say, how will we ever get it back? Is that fair? Always in pursuit of the changed obligations going forward. Their preliminary injunction before the Bell ruling was sought to prospective injunction. There was never a demand for the ability to go back and get money that had been paid, including money that had been paid before the December 8, 2012 final approval. And yet no one is saying they can't go back if fraud is later ascertained. No, if fraud is ascertained, that's right. And that gets to the heart of the restitution issue in this case. Because I agree with Mr. Hungar that this is controlled by Section 18 of the Restatement of Restitution. And Section 18 directs itself to something called transfers under legal compulsion. And the question is, what does it mean to be under legal compulsion? We cite to Comment C of Section 18 of the Restatement, which says payment by way of compromise and settlement is not subject to recovery and restitution. Well, there is a process. I mean, there was an appeals process. That's correct, Your Honor. Underway. And the releases were already in the hands of the claimants. They couldn't claw back the releases. They didn't have control over that. That's correct. But they, as early as March of 2013, they asked the district court to stay the payment process, didn't they? Yes, but many payments had gone out before then. These are payments that began in June of 2012. These are claims that began to be processed in June of 2012, and there were already payments out the door in November of 2012. That is, before the district court had Let's talk about payments out the door after November of 2012. Let's just talk about November 2012 forward. BP started the appeals process and said, Wait a minute, don't make these payments. And the district court said, I ruled against you, the administrator, to make the payments. So how is that not payment under judicial order? It's not payment under judicial order. It's a voluntary settlement. When BP's trying to appeal it and the judge is saying no, how is that voluntary? Well, Your Honor, in Section 4.412 of the settlement agreement, the same language is used, that this is subject to compromise and settlement. The parties agree. But they didn't say we'll pay without an appeal. They said we have the right to appeal. That is correct, Your Honor. They exercised their right to appeal, and they didn't get, they had to go to the Fifth Circuit ultimately to get their appeal vindicated. No, they had the right to challenge those individual determinations. Which they did. No, they did not, Your Honor. They did not take an appeal from those individual determinations. I thought they said they did. No, they did not. They took an appeal from the BEL ruling of the district court. Their brief says they began appealing individual awards in November of 2012. Is that correct? They began appealing them internally. Internally. Internally. So they exhausted the internal process. And the district court said I'm not going to consider any of these appeals. That's right, and that means that there's finality, as this court just ruled in the most recent opinion on Rule 78. And then they appealed the global determination. They appealed the policy determination to the Fifth Circuit. They did not say John Smith's Enterprise received this much money, and therefore we have Well, it would have been a case of controversy on the BEL payments unless they were appealing somebody's payments. They did not appeal a single individual payment to the BEL court. There is no discussion in the BEL record. Well, it would have been an abstract exercise unless payments were made. Well, that was a difficulty. That's been a difficulty in this case from the beginning, Your Honor. This was an issue that occupied most of the oral argument at the first, in Deepwater Horizon 1, the BEL ruling, was how exactly does this case get before the district court? I'm sorry, before the Court of Appeals. This court has now ruled that every single one of these payments is subject to an individual appeal. They did not take the individual appeal. They did not notice it. They did not perfect it in any way. The first time that they sought anything from these claimants was in 2014, a year after, or in some cases two years after, payment had been made. Well, but they asked the district court to stop the process. Apparently, in January of 2013, they asked the district court to reverse the administrator's, the way he construed the settlement agreement. That is correct. And they asked the district court to stay further payments while that was happening, and the district court said no. That's correct. That's correct. The district court did not stay it, and this court did not stay it. Consistently throughout, they asked the district court, and this court stopped the payments, and the district court didn't, and we didn't. This court did not. That is correct. But there was no request made. There was no appeal taken from those payments, and there was no request made in this court or any court until subsequently to get that money back in any way. They could have noticed an appeal. They could have perfected the record and said we will docket these under their Rule 79 procedure, and we will take an appeal from this. We will take an appeal to the Fifth Circuit as a preservative matter. They did not do so. They could have done it blanketly. They could have said we appeal. Isn't that issue still alive? But our court did last month say revisit those. It's the blanket block. Well, but the blanket block does nothing but say, I'm going to tell you what effectively what Judge Barbier is saying is, I've heard this over and over again. Let me tell you what's going to happen. You're going to take an appeal from this, and I'm going to deny it. So I'm telling you, it's final. Don't send it to me. It's final. Now, in the nonprofit case, which this court just decided, what they did in the face of that kind of blanket prohibition was they docketed the cases, they took it up, and they lost, and that's entirely appropriate. Who's they? BP. I thought they won that. I thought the remand back was for him to revisit his one. No, no, no. There were two separate cases that this court decided on May 8th. In the nonprofit appeals, there were three nonprofit entities that they were challenging the awards to. They were also faced with a blanket denial there. They docketed those cases. The court said we have jurisdiction. This court said we have jurisdiction over that, and, BP, you lose. You lose on the merits. And that's an entirely appropriate mechanism to bring the case to the Fifth Circuit. As to the universal block, I don't want to hear these anymore. Where does that stand? That's going to be revisited by the district court, but this court did not say that's necessarily erroneous. This court did not say that that's – But it will be revisited. It will be revisited, but it has no retrospective effect. That just is prospective, and it means that they may be able to docket some of these appeals individually if they want to. We think they lose on the merits anyway, and we would rather get to the merits of the release at this point rather than have to revisit it in the context of – Well, but that's where I have a problem, because they didn't voluntarily sign – give a release. They had appeals pending. The judge said, I'm not going to hear. And now if those appeals get revived, why should that release be effective when they had the right under the agreement to appeal? They had the right to appeal internally. And to the district court. And to the district court. And from the district court to this court. No, that's not in the – excuse me, Your Honor. That's not in the record. That would be the consequence of 1291. Well, that's the consequence of what this court has ruled subsequently, because there were prior cases of this court in the lease oil context. So if they had an appeal pending and they still might be able to pursue those appeals, that release is not effective while the appeal process is in process. So why are we fussing about the release? I think that it is effective, Your Honor, because there is a long line of cases that says that restitution is not available unless there is a judicial order saying you must pay this. Well, but, I mean, you put more stress on the release. I guess my view of this is more looking back to the settlement agreement itself and recital H. Right. The recital H is – If you could switch to that. Okay. I thought of it. I mean, opposing counsel just pointed out 18 to 35 seem roughly similar. Do you accept that? I think that it's 18 that is controlling here. I'm going to say that, but with the law, would the outcome be different? I don't think the outcome would be different, Your Honor, because – Okay. So the question for me, if we look at Rule 35, Section 35, is the issue before us one of – they clearly didn't pay the larger inflated amounts gratuitously. So the issue would be when they signed that settlement agreement, did they compromise away this type of methodology? Now, I take it there's clearly no evidence that they explicitly, as in the Iowa case, knew, oh, it will be non-matching, and we want finality and peace, and we accept that inflated amount. So when they use the word irrevocable, it's problematic because it's – I'm saying that at the time of the agreement, they anticipated this problem. Well, they said in at least five different places in the settlement agreement that no matter what happens on appeal, what happens anyplace further down the road, the payment to you is it. That's final. That's consideration. I understand it, and it's a strong argument, but could they have compromised away even the claims administrator doing a multiplier accidentally in every case, pervasive? I'll just give a million dollars to every claimant. Would you then be saying here that's irrevocably out the door? Well, Your Honor, I would be making a two-part argument in that case. This court a couple of weeks ago handed down a case, one of the Deepwater Horizon cases, the Elton Johnson case, and there was a division two to one in that case on whether having no signed release at all could still be enforceable against BP. But what's critical is that both the dissent and the majority opinion accepted that there's an objective standard of what a reasonable person would conclude under that circumstance. If there is fraud, no reasonable person can form a contractual reliance, an objective contractual reliance. If there is something that is clearly a scrivener's error. What's the best case that describes this reasonableness? Because just the prospect of inflated monies that shouldn't have been given, which is our court's law now, two to one divided bill decision, but there it is. It doesn't sit well. It doesn't sit any better for me than fraud if a claimant has gotten unjustly enriched. So how do we look at who's the reasonable one? What's the best case on this reasonableness exception to Section 35? Well, I don't have a case that's exactly on point, Your Honor. It sounds appealing. Well, the cases that it comes from is the long line of cases that said if there's a contract, the remedies you look in contract, you don't look in restitution or quasi-contract or any of those kinds of decisions. And both Judge Reveley and Judge Owen were on the Texas Supreme Court, and the Texas Supreme Court has a long line of cases about the non-availability of restitutionary remedies when an action lies in contract. And that's an overperformance. Well, we come back to the contract, and here's what I keep. I'm sorry. They had the release, and they could sign it, but BP still had appeal rights. That is correct. If whether they signed the release and sent it back, it doesn't matter. BP still had the right to appeal, so that release can't take that right away. Well, it's not just the release, Your Honor. If you look at Section 4.410.3, which is on page 8 of our record excerpts, it says that the settlement payments are sufficient and adequate consideration for each and every term of the individual releases. So what does the right to appeal mean? The right to appeal occurs before the payments go out. They exhausted their internal remedies, and then the payments went out. They had an appeal, and they said, We're appealing this. And the judge says, You lose. I'm ordering the claims administrator to pay. That's right. And they said, Whoa, whoa, whoa. We're going to take it up to the Fifth Circuit. No, they said, Not this case. If you take the ABC Company. These are all small businesses that we're dealing with. If you take the ABC Company, they did not say, Wait a minute. Don't pay ABC because we're appealing that. They asked for a stay in the district court. They asked for a stay from this court. They asked for a stay after many, if not most, of these payments had either been made or the appeals process internally had been exhausted. So with regard, for example, to those individuals who were paid before December 8, 2012, there was no class action in place at that point. There was no judicial order available at that point that would compel it in any form. They were paying voluntarily on a contractual basis. After December 8, 2012. Then after December 8, 2012, then you have a situation where there's an enforceable class settlement at that point. But the class settlement also permits the individual releases. And if you look at... Which are subject to appeal. That's why I can't... Which are subject, Your Honor, they are subject to an internal appellate process. Every one of these cases had access to the internal appellate process. It was exhausted. The district court said, in much the same way that every review in court says... It got reversed. It got reversed, not in these individual cases, but in future cases. That's what takes us into restitution and not simply into a case where you keep it alive. Of course, if you keep it alive, and that's the difference between Section 35 and Section 18 of the restatement. If you keep it alive by filing the notice of appeal in the Court of Appeals, then of course you're entitled to get some part back if the basis for the judgment is reversed. But in this case, they did not do that. They did not file an appeal from the ABC company being awarded something... something by the claims process. And 4.4102 and 4.4103 of the settlement agreement say that the individual release shall be the exclusive agreement in understanding between BP claimant and supersedes any and all other agreements, and that nothing that happens on appeals will affect the contract formed by the settlement agreement, and in particular, in 4.4103, by the receipt of payment as full and just consideration for all the claims, including the claims that might be asserted against Transocean, including claims that might be asserted against Halliburton, which might have redounded to the detriment of BP if there were claims for contribution made. The argument they made below, was it Mr. Dorsey? Yes. His view was... Downey, I think. I'm not in the... They have two arguments, I understand, against that proposition. One is the release is a unilateral one, and most of it has elements that seem unilateral, but you're focusing on paragraph 5. It's got the language about the... You just read to us. But their second argument is the one that Judge Barbier called hair-splitting, but it's that this isn't adjusting terms. The terms have always been the way. It's just been a mistaken term throughout until now. Well, the part... Many parts to the question, Your Honor. The first is, I'm not reading from the release right now, which they have argued is just a unilateral contract. I'm reading from the settlement agreement itself, which is an executed contract by the president of BP... Which incorporates the release. Which not only incorporates the release, but in Section 4.4.102 and 103, says this is a contract between DP, the class, and every claimant individually, and the individual release shall serve as a contract, and the payment, the payment, is the full and just consideration for this contractual obligation. So that's... That's your point on page 42 of your brief, deal is a deal. Right. But then you have the reasonable man exception, which is the only one that can accommodate fraud or big clerical errors. I would submit, Your Honor, that that discussion in our brief is virtually on all fours. It's almost identical to the discussion in this court in the Elton Johnson case, and, in fact, the dispute between the majority and your dissent, Judge Owen, is over whether there had been consideration given at that point. But here we don't have that issue, because contractually the parties have agreed that the payment is the consideration. And so a reasonable person receiving payment with a contract that says that at the point of payment it is consideration and it is final, final, final, final, and there is no further judicial proceeding pending in the case of the ABC Company that has received a check in hand and is now entitled to believe under the terms of the settlement agreement, not just under recital H, but under 4.4102, 4.4103, under 4.13, there are a series of places in the agreement under Section 3.14 as well, where the parties made clear, this is it, this is final, nothing that happens here and after, and there was a reason for that, because it was necessary for the complicated proceeding that included many third parties at the time, and so the finality of this was something that BP bargained for and bargained expressly for, and that is why in Section 4.4103 the parties used the exact same language as is used in Restatement Section 18, that is, that this is by way of compromise and settlement, not by way of judicial compulsion, this is not an admission of liability, there is no judicial finding of liability, this is purely by way of compromise and settlement. That's the voluntary payment, which takes it outside of restitution. No, I think it's broader than that, Your Honor. Yesterday, this Court heard the second round in the Boudreau case. In the first round in the Boudreau case, the issue was whether some kind of misrepresentation and so forth could lead to a restitutionary claim, and this Court said, no, you're out of luck because you made payment, you decided to resolve that. That issue was not before this Court yesterday. I don't want to re-argue Boudreau, but... Please do. No, I think not, Your Honor. But that issue is off the table, and there's a lot of cases where, for example, with injured seamen, there's a payment made under the Longshore Act because the employer believed that that governed, and in turn, it should have been under the Jones Act, and there's no restitution allowed there. There's plenty of cases from this Court that establish that. It is not just the satisfaction, it is the mistake. If I could just briefly just address the injunction question for one minute. The relief that's requested here is twofold. One is a declaration that restitution is in order. We believe it is not. We think that issue is right before this Court. We think this Court should resolve that question. The second issue is they seek an injunction, freezing the assets, essentially, or placing a lien on the assets of 800 or 793 small businesses in this region. That is impermissible without notice to those parties, without any awareness that they are at risk in this. When they filed the request for an injunction below, they filed two documents called Exhibit A and Exhibit B. As they were filed in the public record, they are both blank. Even the unredacted forms just list a series of claim numbers. There's no way to put people on notice that their individual bank accounts... The effects of this would be fatal. These are small businesses. Mr. Gaspardo comes in and says, these are businesses that don't retain money in hand. Of course not. No business does. They have to invest in inventory, they have to hire employees, they have to decide how much infrastructure they have. And if you give them an order saying your cash flow is frozen or has a lien against it because of a possible error in your payment two years prior based upon a review of 200 claims by Mr. Gaspardo, which means the vast majority of these are untouched, unreviewed, that would be an ex parte injunction. That would be prohibited under Rule 65. I think it would be prohibited under the long line of due process cases, such as Connecticut v. Dorr, that do not allow that kind of seizure of assets without individual notice and certainly not in the context... We may have a claim against you down the road for some kind of money owing to us. My time is up. If there's no further questions, I will... Thank you, Your Honor. Did you appeal the district court's global order saying that I will hear no more appeals, this is the end of the appeals process? Yes, Your Honor, and this court reversed on May 8th. And in addition, counsel is simply wrong in claiming that we could have brought the individual appeals from the payment to ABC Company. That's just not true, because the crucial difference between the non-profit appeals that we were able to bring and these appeals that we were precluded from bringing is that we were able in those cases to file those particular requests for judicial review with the judge. The judge issued a ruling, which he refused to docket, but we docketed it ourself. And this court said, once you have a docketed order, you can appeal, even though that's not the normal way it's supposed to work. And it was wrong of the district court not to docket it. But you could appeal, since you had docketed the order, so there's something over which our jurisdiction can vest. But in the case of the matching orders, because the district court refused to let us even request judicial review, we couldn't even get a piece of paper from the judge saying denied, and therefore there was nothing to docket for an individual award that would have enabled us to bring an appeal to this court. So we couldn't appeal, we were wrongly denied our right to appeal, this court has reversed that error, and that provides a separate and independent reason why we're entitled to restitution, because not one but two. Was the global order, no more appeals, written down somewhere? Yes, Your Honor, it's in the May 20, 2013 order. You appealed that order? Yes, we did, and this court reversed on May 8th in the final rules decision, which is cited in our 28J letter, which we submitted. Did you argue that it was error for the judge to cut off your appeal rights, and we want our appeal rights preserved? Yes, Your Honor, that was precisely our argument, and this court agreed. And the May 20 rules are at page 18161 of the record. I would also like to address the assertion that... Where in the Fifth Circuit's ruling did they say your appeal rights should not have been cut off, the district court erred in cutting off your appeal rights in each of these cases? Yes. Where did they rule that? In the May 8th final rules decision that's cited in our 28J letter submitted to this panel in mid-May. And I'd like to also address this assertion or the suggestion that we never gave any suggestion that we were going to ask for this money back until June of 2014. Again, that's wrong. For instance, in our motion to this court for an injunction pending appeal in April of 2013, right after the district court had refused to grant the injunctive relief we were requesting from the district court, we said to this court, again, two years ago, more than two years ago, BP cannot feasibly sue each of the thousands of claimants receiving awards for fictitious losses, and even if BP could recover from class members, the need to pursue such a large number of actions is precisely the sort of asset chasing this court has held demonstrates irreparable harm. There is no reason to believe the claimants will maintain these funds or reserve other assets sufficient to reimburse BP. We were making quite clear we wanted reimbursement. The problem was with the money going out the door, we were not going to be able to get full reimbursement, and that is precisely the case here. As I said, 10,000 awards were only at this point seeking recovery with respect to 800 because it's just not feasible to try to go after all of them. The suggestion that the payment of the award precludes BP from coming back has been conclusively rejected by this court in the nonprofit decision on May 8th, which is also referenced in that same 28-J letter we submitted to the court. The awards in those cases had been paid, and class counsel made precisely the same arguments about the release and the other provisions of the settlement agreement, and individual claimants made precisely the same arguments about the release and the other provisions of the settlement agreement that they're making here. They say it's final, it's irrevocable, BP can't come back, the money's going out the door, that's the end of the story, and this court rejected that argument and reached the merits, and that's footnote four of the nonprofit decision. So that has been resolved. It's also just wrong. It would eliminate the right to appeal. It would vindicate the district court's not one but two errors that caused hundreds of millions of dollars to go out the door wrongly. That is completely unjust, and equity will not tolerate an injustice of this kind. What do you think about the reasonableness exception accommodating fraud and just accidental overpayment but not accommodating a restitution? Your Honor, class counsel's just making that up. The Johnson case wasn't about restitution. It was about whether a contract had been formed, and then fraud as an exception to the contract. There was no restitution issue there. It has nothing to do with this case, and the law is if money goes out the door under an erroneous ruling by a district court, let alone two erroneous rulings as we have in this case, the injured party is entitled to recover. Absent some showing of inequity, and here all the equities are on BP's side. If there are individual equitable defenses for an individual recipient of the funds, they can certainly raise those on remand, but that doesn't justify denying BP its ability to get recovery. And remember, we're not talking about tiny mom-and-pop businesses here. Some of these businesses received over $10 million in windfall, excessive awards they were never entitled to. BP has a right to seek that money back. I see my time has expired.